CMM:AT/JRS/SBB:RJK
F. #2022R01048

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JAN 15 2025   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

KEITH WILLIAMS,
JANINE DAVIS,
    also known as "Holiday Davis,"
MORAIS DICKS,
JAMES HAMES, JR.,
    also known as "Poppa J,"
JAMARI LEWIS,
    also known as "Mr. Chaketah,"
EWENDRA MATHURIN,
    also known as "Rayda Mathurin," and
TIFFANY WILLIAMS,
    also known as "Joy Williams,"

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

I N D I C T M E N T

Cr. No. **CR25      20**

(T. 18, U.S.C., §§ 371, 981(a)(1)(C),
982(a)(2), 982(b)(1), 1343, 2 and 3551 et
seq.; T. 21, U.S.C., § 853(p); T. 26,
U.S.C., § 7206(2); T. 28, U.S.C.,
§ 2461(c))

SEYBERT, J.

TISCIONE, M.J.

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    <u>The Defendants and Relevant Entities and Individuals</u>

1.    The defendant KEITH WILLIAMS ("K. WILLIAMS") was a resident of West Hempstead, New York. K. WILLIAMS owned and controlled Credit Reset Me Inc. ("Credit Reset"), a New York corporation, which was purportedly a credit repair business located at 683 Hempstead Turnpike, Franklin Square, New York. K. WILLIAMS also owned and controlled 109 Super Store Motors Inc. ("109 Super Store"), Babylon Buyers Group Inc.

("Babylon Buyers") and Lucky 13 Sports Bar and Grill Corp. ("Lucky 13"), each New York corporations.

2.      The defendant JANINE DAVIS, also known as "Holiday Davis," was a resident of Wheatley Heights, New York, and worked as a tax preparer. DAVIS owned and controlled 7 Port LLC ("7 Port") and Holiday's Promise Ltd. ("Holiday's Promise"), each New York corporations.

3.      The defendant MORAIS DICKS was a resident of Dix Hills, New York. DICKS owned and controlled Progressive Homes and Development Inc. ("Progressive Homes") and Service Advisors, Inc. ("Service Advisors"), each New York corporations.

4.      The defendant JAMES HAMES, JR., also known as "Poppa J," was a resident of Campbell Hall, New York. HAMES owned and controlled MJR Enterprise Consulting Inc. ("MJR"), a New York corporation.

5.      The defendant JAMARI LEWIS, also known as "Mr. Chaketah," was a resident of Queens, New York and Charlotte, North Carolina. LEWIS owned and controlled Chakeetah, LLC ("Chakeetah"), a Colorado corporation.

6.      The defendant EWENDRA MATHURIN, also known as "Rayda Mathurin," was a resident of Queens Village, New York. MATHURIN owned and controlled Island Stream Inc. ("Island Stream") and Rich n' Yummy Inc. ("Rich n' Yummy"), each New York corporations.

7.      The defendant TIFFANY WILLIAMS ("T. WILLIAMS"), also known as "Joy Williams," was resident of Brooklyn, New York, and worked as a tax preparer. T. WILLIAMS owned and controlled J 2nd Power Trucking Company ("J2"), a Delaware corporation, and Joy the Bookkeeper Corp. ("Joy the Bookkeeper"), a New York corporation.

8.      Company #1 through Company #22, entities the identities of which are known to the Grand Jury, were companies purportedly owned individually by the defendants and their co-conspirators and used in furtherance of the defendants' fraudulent scheme.

9.      Co-Conspirator #1, an individual whose identity is known to the Grand Jury, was an associate of the defendant JAMARI LEWIS.

10.     Co-Conspirator #2, an individual whose identity is known to the Grand Jury, was business partners with the defendant KEITH WILLIAMS and controlled Company #1 through Company #3.

11.     Co-Conspirator #3, an individual whose identity is known to the Grand Jury, was employed at Credit Reset and controlled Company #4.

12.     Co-Conspirator #4, an individual whose identity is known to the Grand Jury, was a client of and employee at Credit Reset and controlled Company #5 and Company #6.

13.     Co-Conspirator #5, an individual whose identity is known to the Grand Jury, was an associate of the defendants KEITH WILLIAMS and JAMARI LEWIS and controlled Company #7.

14.     Co-Conspirator #6, an individual whose identity is known to the Grand Jury, was a client of the defendant JAMES HAMES, JR. and controlled Company #8 through Company #14.

15.     Co-Conspirator #7, an individual whose identity is known to the Grand Jury, was a client of the defendant JAMES HAMES, JR. and controlled Company #15 and Company #16.

16.     Individual #1, an individual whose identity is known to the Grand Jury, was a client of the defendant MORAIS DICKS and controlled Company #17.

4

17.    Individual #2, an individual whose identity is known to the Grand Jury, was an associate of the defendant JAMARI LEWIS and worked at Credit Reset.  Individual #2 controlled Company #18 through Company #20.

18.    Individual #3, an individual whose identity is known to the Grand Jury, controlled Company #21 and Company #22.

19.    Individual #4, an individual whose identity is known to the Grand Jury, was a client of the defendant TIFFANY WILLIAMS and controlled Company #23.

20.    Individual #5, an individual whose identity is known to the Grand Jury, controlled Company #24 and Company #25.

21.    The Tax Preparation Software ("TPS") was a tax return preparation software accessible via the internet that was used to prepare and electronically file with the Internal Revenue Service ("IRS") various tax returns and related documents.

II.    Relevant Governmental Agencies and Definitions

22.    The IRS was an agency of the United States Department of the Treasury responsible for administering and enforcing federal tax laws, including refundable tax credits, of the United States and collecting taxes owed to the United States.

23.    Federal law required employers to collect, truthfully account for, and pay over to the United States certain payroll taxes, including their employees' withheld federal income taxes, Social Security and Medicare taxes, and the employer's matching portion of the Social Security and Medicare taxes.  A responsible person at a business was required to file, quarterly, an Employer's Quarterly Federal Tax Return, Form 941 ("Form 941"), reporting certain information and assessing payroll taxes for the business and reporting certain information, including the number of employees working at the business and the wages paid by the business.

24.    A Wage and Tax Statement, Form W-2 ("Form W-2"), reported wages paid by an employer to an employee and taxes withheld from those wages. It was issued by United States employers to employees and filed by employers with the Social Security Administration ("SSA").

25.    A Schedule C was a form attached to an Individual Income Tax Return and filed with the IRS on which the taxpayer reported, among other things, gross receipts, expenses, and income or loss from a business the taxpayer operated as a sole proprietor.

26.    The Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

27.    A tax return was a filing with the IRS which detailed the tax obligations of the taxpayer or organization. Tax returns in the United States included, among others, Form 941 and Form 1040.

III.    The COVID-19 Pandemic in the United States and Related Tax Credits

28.    In or about December 2019, a novel coronavirus caused outbreaks of the coronavirus disease COVID-19 that spread globally. On or about January 31, 2020, the Secretary of the United States Department of Health and Human Services declared a national public health emergency under Title 42, United States Code, Section 247d as a result of the spread of COVID-19 to and within the United States. On or about March 13, 2020, the President of the United States issued Proclamation 9994, declaring a national emergency beginning on or about March 1, 2020, as a result of the rapid spread of COVID-19.

A.    Employee Retention Credits

29.    The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020, provided for an employee retention credit ("ERC"), a refundable tax credit, which was designed to encourage businesses to keep employees on their payroll during the COVID-19 pandemic. The Taxpayer Certainty and Disaster Tax Relief Act of 2020 and the American Rescue Plan Act ("ARPA") modified and extended the ERC.

30.    For calendar year 2020, eligible employers were authorized to claim an ERC offsetting certain employment taxes that could not exceed 50 percent of up to $10,000 of qualified wages paid to each employee from March 13, 2020, through December 31, 2020. The maximum ERC for 2020 was $5,000 per employee per quarter. For calendar year 2021, eligible employers were authorized to claim an ERC offsetting certain employment taxes that could not exceed 70 percent of up to $10,000 of qualified wages paid to each employee during each quarter. The maximum ERC for 2021 was $7,000 per employee per quarter.

31.    Generally, businesses and tax-exempt organizations that qualified for the ERC were those that: (a) were shut down during 2020 or the first three calendar quarters of 2021 by government order due to the COVID-19 pandemic; (b) experienced a specified decline in gross receipts during the eligibility periods during 2020 or the first three calendar quarters of 2021; or (c) qualified as a recovery startup business for the third or fourth quarters of 2021.

32.    A recovery startup business was defined in Title 26, United States Code, Section 3134(c)(5) as an employer (i) that began carrying on any trade or business after February 15, 2020, (ii) for which the average annual gross receipts of the employer for the three-taxable-year period ending with the taxable year that precedes the calendar quarter for which the credit is determined does not exceed $1,000,000, and (iii) that is not otherwise an eligible employer due to a full or partial suspension of operations or a decline in gross receipts.

B.    Sick and Family Leave Wage Credits

33.    The Families First Coronavirus Response Act provided for eligible employers to receive refundable tax credits for wages paid to employees while on sick leave to recover from any injury, disability, illness or condition resulting from COVID-19 or wages paid to employees while on family leave to care for a family member who was injured, disabled, ill or otherwise suffering from a condition due to COVID-19. Together these credits were called the Sick and Family Leave Wage Credit ("SFLC," and together with the ERC, the "COVID-Related Tax Credits").

34.    Under the SFLC, employers were entitled to receive a dollar-for-dollar credit for qualified wages paid to an employee, plus allocable health plan expenses and the employer's share of Medicare taxes, while that employee was on sick leave resulting from COVID-19. This credit was limited to ten days of sick leave per employee for the period ending March 31, 2021. That resulted in a maximum credit of $5,110 per employee for that period. The ARPA provided an identical credit for the period April 1, 2021 through September 31, 2021, with the same maximum of $5,110 in credits per employee.

35.    In addition, under the SFLC, employers were also entitled to receive a credit of up to two-thirds of the qualified wages paid to an employee while that employee was on family leave to care for a family member suffering from a condition resulting from COVID-19, plus allocable health plan expenses and the employer's share of Medicare taxes. For the period ending March 31, 2021, this credit was limited to $200 per day for up to ten weeks, resulting in a maximum eligible credit of $10,000 per employee. The ARPA provided an identical credit for the period April 1, 2021 through September 31, 2021, and extended the length of family leave to

twelve weeks, thereby raising the maximum eligible credit for that period to $12,000 per employee.

36.     An employer claimed COVID-Related Tax Credits by filing a Form 941 with the IRS for the relevant quarter. The Form 941 required an employer to provide to the IRS information about the number of employees the business had and the wages paid by the business during that quarter.

37.     The same wages could not be claimed as both qualified sick leave wages and qualified family leave wages. Employers were also not eligible to receive both the ERC and SFLC with respect to the same wages.

C.     The Paycheck Protection Program

38.     The CARES Act also authorized up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

39.     To obtain a PPP loan, a qualifying business was required to submit a "PPP Loan Application," which included an SBA Form 2483 – Borrower Application Form – and supporting documentation. On the PPP Loan Application, an authorized representative of the applying business was required to acknowledge the program rules and make certain affirmative certifications to establish eligibility for the PPP loan. For example, on SBA Form 2483, the recipient business, through an authorized representative, was required to state, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the business was eligible to receive under the PPP.

9

40.     The required supporting documentation for the SBA Form 2483 in the PPP Loan Application frequently included, when the applicant was a sole proprietorship, the most recent Schedule C, Profit or Loss from Business, filed by the owner of the business attached to their Individual Income Tax Return.

41.     The representative of the business who submitted the PPP Loan Application was required to certify, on SBA Form 2483, that they understood that, should the PPP funds be knowingly used for unauthorized purposes, the United States could pursue legal remedies against the authorized representative, including charges of fraud.

42.     Recipient businesses were required to use PPP loan proceeds for certain permissible expenses, including, but not limited to, payroll costs, interest on mortgages, rent, and utilities.  The PPP provided that the principal and interest on a PPP loan would be entirely forgiven if the recipient business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain percentage for payroll costs.

43.     The SBA administered PPP loans.  Individual PPP loans, however, were issued and approved by private lenders, who received and processed PPP loan applications and supporting documentation and, following SBA approval, made loans using the lenders' own funds.

IV.    The Defendants' Fraudulent Covid-Related Tax Credits Scheme

44.     From in or about and between November 2021 and June 2023, the defendants KEITH WILLIAMS, JANINE DAVIS, MORAIS DICKS, JAMES HAMES, JR., JAMARI LEWIS, EWENDRA MATHURIN and TIFFANY WILLIAMS, together with others, orchestrated a scheme to submit more than $600 million in fraudulent requests for COVID-

Related Tax Credits designed to help workers and businesses negatively impacted by the COVID-19 pandemic by filing more than 8,000 false Forms 941. As a result of the scheme, the United States Treasury disbursed approximately $45 million to the defendants, their co-conspirators and clients.

45. The defendants KEITH WILLIAMS, JANINE DAVIS, MORAIS DICKS, JAMES HAMES, JR., JAMARI LEWIS, EWENDRA MATHURIN and TIFFANY WILLIAMS, their co-conspirators and clients were not entitled to the amount of COVID-Related Tax Credits or resulting tax refunds claimed on the Forms 941 that the defendants and their co-conspirators prepared and filed. The fraudulent tax returns (including Forms 941) filed by the defendants and their co-conspirators claimed tax refunds based on falsely reported wages and benefits that the defendants and their co-conspirators knew had not been paid.

46. Many of the entities, including Company #1 through Company #22, reported on the fraudulent Forms 941 that the defendants KEITH WILLIAMS, JANINE DAVIS, MORAIS DICKS, JAMES HAMES, JR., JAMARI LEWIS, EWENDRA MATHURIN and TIFFANY WILLIAMS and their co-conspirators prepared and filed, and caused to be prepared and filed, were not as they were represented on the Forms 941. Contrary to the representations made in the Forms 941, the entities were inactive, had no employees, had not made prior tax return filings, had no physical business location and/or did not timely file Forms W-2 for wages paid to employees.

47. Furthermore, nearly all the Forms 941 that the defendants KEITH WILLIAMS, JANINE DAVIS, MORAIS DICKS, JAMES HAMES, JR., JAMARI LEWIS, EWENDRA MATHURIN and TIFFANY WILLIAMS and their co-conspirators prepared and filed, and caused to be prepared and filed, fraudulently sought more refunds than the ERC or

SFLC allowed. For example, many of the Forms 941 that the defendants and their co-conspirators prepared and filed, either: (i) claimed an SFLC in excess of the amount of wages reported; (ii) listed the same wages as both qualified sick leave wages and qualified family leave wages; and/or (iii) claimed an SFLC and ERC for the same wages. None of these were permitted under the prevailing legal framework.

48.     Although the defendants carried out their fraudulent scheme using a number of different physical locations and entities, it was primarily operated out of Credit Reset, which was owned and controlled by KEITH WILLIAMS. Many of the defendants and their co-conspirators either worked at Credit Reset for K. WILLIAMS for portions of the scheme or visited Credit Reset in furtherance of the scheme. At Credit Reset and at other locations, including their residences, which were located in the Eastern District of New York and elsewhere, the defendants K. WILLIAMS, JANINE DAVIS, MORAIS DICKS, JAMES HAMES, JR., JAMARI LEWIS, EWENDRA MATHURIN and TIFFANY WILLIAMS and others prepared and filed false tax documents, including, but not limited to, false Forms 941 to obtain ERC or SFLC funds.

49.     The defendants KEITH WILLIAMS, JANINE DAVIS, MORAIS DICKS, JAMES HAMES, JR., JAMARI LEWIS, EWENDRA MATHURIN and TIFFANY WILLIAMS and others created a series of different accounts with TPS, which they used to prepare and file false tax returns, and some of which they shared with other co-conspirators.

50.     For example, between approximately May 2022 and February 2023, three different TPS accounts controlled by the defendants KEITH WILLIAMS, JAMES HAMES, JR., JAMARI LEWIS and Co-Conspirator #2 were used to prepare and file 22 false Forms 941 for the benefit of Individual #2. The false filings made on behalf of Individual #2 were purportedly

on behalf of Company #18, Company #19 and Company #20 and claimed fraudulent refunds totaling approximately $1.43 million.  Each of these filings was fraudulent because, among other things, they claimed SFLC and ERC for the same wages.

51.     Additionally, between approximately June 2022 and November 2022, a TPS account controlled by the defendant KEITH WILLIAMS and a TPS account controlled by the defendant JAMARI LEWIS were used to prepare and file, or attempted to prepare and file, nine false Forms 941 for the benefit of Individual #3.  The false filings were purportedly on behalf of Company #21 and Company #22 and claimed fraudulent refunds totaling approximately $645,848.  Each of these filings was fraudulent because, among other things, they claimed SFLC and ERC for the same wages.

52.     Further, between approximately March 2022 and September 2022, a TPS account controlled by the defendant KEITH WILLIAMS and a TPS account controlled by the defendants JANINE DAVIS and TIFFANY WILLIAMS were used to prepare and file, or attempted to prepare and file, seven false Forms 941 for the benefit of Individual #4.  The false filings were purportedly on behalf of Company #23 and claimed fraudulent refunds totaling approximately $287,173.  Each of these filings was fraudulent because, among other things, they claimed SFLC and ERC for the same wages.

53.     In addition, between approximately September 2022 and March 2023, a TPS account controlled by the defendant KEITH WILLIAMS and a TPS account controlled by Co-Conspirator #2 were used to prepare and file 15 false Forms 941 for the benefit of Individual #5.  The false filings were purportedly on behalf of Company #24 and Company #25 and claimed fraudulent refunds totaling approximately $778,172.  Each of these filings was fraudulent because, among other things, they claimed SFLC and ERC for the same wages.

54.     The defendants KEITH WILLIAMS, JANINE DAVIS, MORAIS DICKS, JAMES HAMES, JR., JAMARI LEWIS, EWENDRA MATHURIN and TIFFANY WILLIAMS and their co-conspirators concealed their roles in the preparation of the false Forms 941 by, among other things, not listing themselves on the returns as the paid preparer of the return as required and, at times, using Virtual Private Networks ("VPNs") to obscure their computers' true Internet Protocol address and location to connect to TPS.

55.     The defendants KEITH WILLIAMS, JANINE DAVIS, MORAIS DICKS, JAMES HAMES, JR., JAMARI LEWIS, EWENDRA MATHURIN, TIFFANY WILLIAMS, their co-conspirators and others profited from the scheme in several different ways. The defendants received tax refunds, in the form of United States Treasury checks, based on false Forms 941 submitted for one or more of their own purported companies. The defendants also profited by recruiting clients to have false Forms 941 prepared by their co-conspirators and receiving a portion of the fee paid by the client to the co-conspirator. Finally, the defendants charged clients a fee for initially preparing the false Forms 941 and/or collected a percentage of the fraudulently obtained tax refund as a fee.

56.     For example, on several occasions, after the defendant KEITH WILLIAMS received a fee from a client or a United States Treasury check generated by a false Form 941, K. WILLIAMS compensated the defendants JAMARI LEWIS, MORAIS DICKS, JANINE DAVIS and EWENDRA MATHURIN, and Co-Conspirator #2 and Co-Conspirator #4, for their roles in obtaining the fraudulent COVID-Related Tax Credits.

57.     To carry out the fraudulent scheme, the defendants and their co-conspirators communicated using text messages, phone calls, and a WhatsApp group, among other methods of communication. For example, on or about November 23, 2022, the defendant

14

KEITH WILLIAMS sent text-based messages to the defendant JAMES HAMES, JR. describing the false statements that clients of the defendants and their co-conspirators should provide when they called the IRS to check on the status of their tax refund. On or about November 27, 2022, HAMES texted the instructions he received from K. WILLIAMS to Co-Conspirator #6.

58.    Form 941, on which the COVID-Related Tax Credits were claimed by the defendants and their co-conspirators, required the taxpayer to have an Employer Identification Number ("EIN"), which is a nine-digit federal tax identification number assigned by the IRS for businesses, tax-exempt organizations and other entities. If a prospective client did not have an EIN, the defendants KEITH WILLIAMS, JANINE DAVIS, MORAIS DICKS, JAMES HAMES, JR., JAMARI LEWIS, EWENDRA MATHURIN and TIFFANY WILLIAMS, together with others, sometimes provided the client with a business with an EIN or facilitated the client's purchase of one to then be used to file Forms 941 claiming COVID-Related Tax Credits. Often, the entities that the defendants provided to clients were shell companies or companies that were previously operational businesses but were no longer operating.

59.    On occasion, the IRS and SSA requested additional information regarding the Forms 941 filed by the defendants KEITH WILLIAMS, JANINE DAVIS, MORAIS DICKS, JAMES HAMES, JR., JAMARI LEWIS, EWENDRA MATHURIN and TIFFANY WILLIAMS. When that happened, the defendants and their co-conspirators transmitted and caused to be transmitted false information to the IRS and prepared and filed with the SSA false Forms W-2 corresponding to the previously filed false Forms 941. For example, in or about March 2022, LEWIS instructed Co-Conspirator #5 to submit false information regarding Business #7 to the IRS in response to a request for taxpayer information.

15

## V.    The Defendants' Fraudulent PPP Loans

60.    From the onset of the COVID-19 pandemic, the defendants KEITH WILLIAMS, JANINE DAVIS, MORAIS DICKS, JAMES HAMES, JR., JAMARI LEWIS, EWENDRA MATHURIN and TIFFANY WILLIAMS also each fraudulently obtained government funds by filing and causing to be filed false PPP loan applications requesting PPP loans for themselves.

61.    Among other things, in some instances, the defendants provided false supporting documentation included with their PPP loan applications, including false tax forms representing, among other falsehoods, that wages were paid that were not paid to employees that did not exist.  Some of the false tax forms that were included in the PPP loan applications were never filed with the IRS.  The PPP loan applications themselves were also fraudulent in that in some instances, the defendants represented that wages were paid that were not paid to employees that did not exist.

COUNT ONE
(Conspiracy to Defraud the United States)

62.    The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

63.    In or about and between November 2021 and June 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants KEITH WILLIAMS, JANINE DAVIS, also known as "Holiday Davis," MORAIS DICKS, JAMES HAMES, JR., also known as "Poppa J," JAMARI LEWIS, also known as "Mr. Chaketah," EWENDRA MATHURIN, also known as "Rayda Mathurin," and TIFFANY WILLIAMS, also known as "Joy Williams," together with others, did knowingly and willfully conspire to defraud the United States by impeding, impairing, obstructing and defeating the

16

lawful governmental functions of the IRS, specifically, the administration and distribution of COVID-Related Tax Credits.

64.   In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants KEITH WILLIAMS, JANINE DAVIS, also known as "Holiday Davis," MORAIS DICKS, JAMES HAMES, JR., also known as "Poppa J," JAMARI LEWIS, also known as "Mr. Chaketah," EWENDRA MATHURIN, also known as "Rayda Mathurin," and TIFFANY WILLIAMS, also known as "Joy Williams," together with others, did commit and cause the commission of, among others, the following:

<u>OVERT ACTS</u>

(a)   On or about November 29, 2021, LEWIS directed Co-Conspirator #1 to file a fraudulent Form 941 claiming an approximately $64,182 tax refund based on COVID-19 Related Tax Credits for Chakeetah to which it was not entitled.

(b)   On or about January 28, 2022, K. WILLIAMS and LEWIS directed Co-Conspirator #1 to file a fraudulent Form 941 claiming an approximately $115,632 tax refund based on COVID-19-Related Tax Credits for 109 Super Store to which it was not entitled.

(c)   On or about February 8, 2022, MATHURIN prepared and filed and caused to be prepared and filed with the IRS a fraudulent Form 941 claiming an approximately $59,966.39 tax refund based on COVID-19-Related Tax Credits for Island Stream for which it was not entitled.

(d)   On or about March 18, 2022, DAVIS prepared and filed and caused to be prepared and filed with the IRS a fraudulent Form 941 claiming an approximately

$54,976.14 tax refund based on COVID-19-Related Tax Credits for Holiday's Promise for which it was not entitled.

(e)    On or about March 18, 2022, T. WILLIAMS prepared and filed and caused to be prepared and filed with the IRS a fraudulent Form 941 claiming an approximately $45,989.12 tax refund based on COVID-19-Related Tax Credits for J2 for which it was not entitled.

(f)    On or about June 20, 2022, Co-Conspirator #2 caused to be prepared and filed with the IRS a fraudulent Form 941 claiming an approximately $115,992.14 tax refund based on COVID-19-Related Tax Credits for Company #2 for which it was not entitled.

(g)    On or about June 23, 2022, HAMES prepared and filed and caused to be prepared and filed with the IRS a fraudulent Form 941 claiming an approximately $71,875.94 tax refund based on COVID-19-Related Tax Credits for Company #12 for which it was not entitled.

(h)    On or about July 14, 2022, K. WILLIAMS prepared and filed and caused to be prepared and filed with the IRS a fraudulent Form 941 claiming an approximately $57,816.22 tax refund based on COVID-19-Related Tax Credits for Company #6, for which it was not entitled.

(i)    On or about September 30, 2022, LEWIS prepared and filed and caused to be prepared and filed with the IRS a fraudulent Form 941 claiming an approximately $67,092.02 tax refund based on COVID-19-Related Tax Credits for Chakeetah for which it was not entitled.

18

(j)    On or about October 22, 2022, LEWIS and Co-Conspirator #5 prepared and filed and caused to be prepared and filed with the IRS a fraudulent Form 941 claiming an approximately $73,970.67 tax refund based on COVID-19-Related Tax Credits for Company #7 for which it was not entitled.

(k)    On or about January 5, 2023, DICKS directed Individual #1, who just days prior had received over $200,000 in tax refund checks as a result of false Forms 941 prepared and filed by the defendants and their co-conspirators, to write a check for $100,000 to Progressive Homes.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

### COUNTS TWO THROUGH SEVEN
(Wire Fraud)

65.    The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

66.    On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant KEITH WILLIAMS, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the IRS and to obtain money and property from the IRS by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: the following Forms 941, all of which were electronically filed with the IRS.

| Count | Approximate Date | Description of Wire Transmission |
|---|---|---|
| TWO | 1/28/2022 | A Form 941 for 2021 4th Quarter for 109 Super Store claiming a tax refund of approximately $115,632. |

19

| Count | Approximate Date | Description of Wire Transmission |
|---|---|---|
| THREE | 1/31/2022 | A Form 941 for 2021 1st Quarter for Lucky 13 claiming a tax refund of approximately $76,012. |
| FOUR | 5/30/2022 | A Form 941 for 2022 1st Quarter for 109 Super Store claiming a tax refund of approximately $61,230.51. |
| FIVE | 6/30/2022 | A Form 941 for 2022 2nd Quarter for Babylon Buyers claiming a tax refund of approximately $63,948.22. |
| SIX | 10/19/2022 | A Form 941 for 2022 3rd Quarter for Babylon Buyers claiming a tax refund of approximately $63,948.35. |
| SEVEN | 10/19/2022 | A Form 941 for 2022 2nd Quarter for Lucky 13 claiming a tax refund of approximately $66,576.28. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNTS EIGHT THROUGH TEN
(Wire Fraud)

67.    The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

68.    On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant JAMARI LEWIS, also known as "Mr. Chaketah," together with others, did knowingly and intentionally devise a scheme and artifice to defraud the IRS and to obtain money and property from the IRS by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit, the following Forms 941, all of which were electronically filed with the IRS:

| Count | Approximate Date | Description |
|---|---|---|
| EIGHT | 11/29/2021 | A Form 941 for 2020 2nd Quarter for Chakeetah claiming a tax refund of approximately $64,182. |
| NINE | 12/3/2021 | A Form 941 for 2021 3rd Quarter for Chakeetah claiming a tax refund of approximately $68,646.97. |

| Count | Approximate Date | Description |
|---|---|---|
| TEN | 12/4/2021 | A Form 941 for 2021 2nd Quarter for Chakeetah claiming a tax refund of approximately $85,897.80. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNTS ELEVEN THROUGH FOURTEEN
### (Wire Fraud)

69.     The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

70.     On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant EWENDRA MATHURIN, also known as "Rayda," together with others, did knowingly and intentionally devise a scheme and artifice to defraud the IRS and to obtain money and property from the IRS by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit, the following Forms 941, all of which were electronically filed with the IRS:

| Count | Approximate Date | Description |
|---|---|---|
| ELEVEN | 2/8/2022 | A Form 941 for 2021 1st Quarter for Island Stream claiming a tax refund of approximately $59,966.39. |
| TWELVE | 4/5/2022 | A Form 941 for 2021 4th Quarter for Island Stream claiming a tax refund of approximately $74,834.13. |
| THIRTEEN | 10/26/2022 | A Form 941 for 2020 2nd Quarter for Rich n' Yummy claiming a tax refund of approximately $89,807.51. |
| FOURTEEN | 10/26/2022 | A Form 941 for 2021 3rd Quarter for Rich n' Yummy claiming a tax refund of approximately $100,500.13. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

21

## COUNTS FIFTEEN THROUGH TWENTY
(Wire Fraud)

71.    The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

72.    On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant JANINE DAVIS, also known as "Holiday Davis," together with others, did knowingly and intentionally devise a scheme and artifice to defraud the IRS and to obtain money and property from the IRS by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit, the following Forms 941, all of which were electronically filed with the IRS:

| Count | Approximate Date | Description |
|---|---|---|
| FIFTEEN | 3/18/2022 | A form 941 for 2020 2nd Quarter for Holiday's Promise claiming a tax refund of approximately $54,976.14. |
| SIXTEEN | 5/30/2022 | A Form 941 for 2021 1st Quarter for 7 Port claiming a tax refund of approximately $235,084.68. |
| SEVENTEEN | 5/30/2022 | A Form 941 for 2021 2nd Quarter for 7 Port claiming a tax refund of approximately $255,192.60. |
| EIGHTEEN | 6/2/2022 | A Form 941 for 2021 4th Quarter for Holiday's Promise claiming a tax refund of approximately $217,376.71. |
| NINETEEN | 6/2/2022 | A Form 941 for 2021 3rd Quarter for Janine Davis (sole proprietorship) claiming a tax refund of approximately $145,007.90. |
| TWENTY | 6/2/2022 | A Form 941 for 2020 3rd Quarter for Janine Davis (sole proprietorship) claiming a tax refund of approximately $66,390.90. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNTS TWENTY-ONE THROUGH TWENTY-FOUR
### (Wire Fraud)

73. The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

74. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant TIFFANY WILLIAMS, also known as "Joy Williams," together with others, did knowingly and intentionally devise a scheme and artifice to defraud the IRS and to obtain money and property from the IRS by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit, the following Forms 941, all of which were electronically filed with the IRS:

| Count | Approximate Date | Description |
| --- | --- | --- |
| TWENTY-ONE | 3/18/2022 | A Form 941 for 2021 1st Quarter for J2 claiming a tax refund of approximately $45,989.12. |
| TWENTY-TWO | 4/1/2022 | A Form 941 for 2020 4th Quarter for J2 claiming a tax refund of approximately $53,519.40. |
| TWENTY-THREE | 4/8/2022 | A Form 941 for 2021 1st Quarter for Joy the Bookkeeper claiming a tax refund of approximately $41,436.35. |
| TWENTY-FOUR | 4/9/2022 | A Form 941 for 2020 3rd Quarter for Joy the Bookkeeper claiming a tax refund of approximately $44,337.38. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNTS TWENTY-FIVE THROUGH TWENTY-SEVEN
### (Wire Fraud)

75. The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

76. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant JAMES HAMES, JR., also known as "Poppa J," together

23

with others, did knowingly and intentionally devise a scheme and artifice to defraud the IRS and to obtain money and property from the IRS by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit, the following Forms 941, all of which were electronically filed with the IRS:

| Count | Approximate Date | Description |
|---|---|---|
| TWENTY-FIVE | 6/15/2022 | A Form 941 for 2022 1st Quarter for MJR claiming a tax refund of approximately $75,358.31. |
| TWENTY-SIX | 10/24/2022 | A Form 941 for 2022 3rd Quarter for MJR claiming a tax refund of approximately $71,658.75. |
| TWENTY-SEVEN | 1/16/2023 | A Form 941 for 2022 4th Quarter for MJR claiming a tax refund of approximately $78,496.01. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNTS TWENTY-EIGHT THROUGH THIRTY-THREE
(Aiding and Assisting in the Preparation of False Tax Returns)

83.    The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

84.    On or about the dates set forth below, within the Eastern District of New York, and elsewhere, the defendant KEITH WILLIAMS willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the IRS of a Form 941, Employer's Quarterly Federal Tax Returns, for each of the periods stated below, which were false and fraudulent as to one or more material matters, and which K. WILLIAMS did not believe to be true and correct as to every material matter:

24

| Count | Entity | Tax Period | Approx. Date | False Items |
|---|---|---|---|---|
| TWENTY-EIGHT | Company #7 | 2021 1st Quarter | 1/31/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13e, Total deposits and refundable credits<br>• Line 15, Overpayment |
| TWENTY-NINE | Company #1 | 2020 2nd Quarter | 2/1/2022 | • Line 2, wages, tips, and other compensation<br>• Line 13e, Total deposits, deferrals, and refundable credits<br>• Line 15, Overpayment |
| THIRTY | Company #5 | 2021 3rd Quarter | 3/26/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13g, Total deposits and refundable credits<br>• Line 15, Overpayment |
| THIRTY-ONE | Company #4 | 2021 4th Quarter | 4/18/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13g, Total deposits and refundable credits<br>• Line 15, Overpayment |
| THIRTY-TWO | Company #2 | 2021 1st Quarter | 6/20/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13e, Total deposits and refundable credits<br>• Line 15, Overpayment |
| THIRTY-THREE | Company #6 | 2022 2nd Quarter | 7/14/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13g, Total deposits and refundable credits<br>• Line 15, Overpayment |

(Title 26, United States Code, Section 7206(2); Title 18, United States Code, Sections 3551 et seq.)

COUNTS THIRTY-FOUR THROUGH FORTY-TWO
(Aiding and Assisting in the Preparation of False Tax Returns)

87.     The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

88.     On or about the dates set forth below, within the Eastern District of New York, and elsewhere, the defendant JAMES HAMES, JR., also known as "Poppa J," willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the IRS of a Form 941, Employer's Quarterly Federal Tax Returns, for each of the periods stated below, which were false and fraudulent as to one or more material matters, and which HAMES did not believe to be true and correct as to every material matter:

| Count | Entity | Tax Period | Approx. Date | False Items |
|-------|--------|-----------|--------------|-------------|
| THIRTY-FOUR | Company #8 | 2020 2nd Quarter | 6/23/2022 | • Line 2, wages, tips, and other compensation<br>• Line 13e, Total deposits, deferrals, and refundable credits<br>• Line 15, Overpayment |
| THIRTY-FIVE | Company #9 | 2020 2nd Quarter | 6/23/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13e, Total deposits and refundable credits<br>• Line 15, Overpayment |
| THIRTY-SIX | Company #10 | 2021 4th Quarter | 6/24/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13g, Total deposits and refundable credits<br>• Line 15, Overpayment |
| THIRTY-SEVEN | Company #14 | 2021 3rd Quarter | 6/26/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13g, Total deposits and refundable credits<br>• Line 15, Overpayment |

26

| Count | Entity | Tax Period | Approx. Date | False Items |
|---|---|---|---|---|
| THIRTY-EIGHT | Company #13 | 2021 1st Quarter | 6/26/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13e, Total deposits and refundable credits<br>• Line 15, Overpayment |
| THIRTY-NINE | Company #12 | 2022 1st Quarter | 6/26/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13g, Total deposits and refundable credits<br>• Line 15, Overpayment |
| FORTY | Company #15 | 2021 2nd Quarter | 6/26/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13g, Total deposits and refundable credits<br>• Line 15, Overpayment |
| FORTY-ONE | Company #16 | 2021 2nd Quarter | 7/4/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13g, Total deposits and refundable credits<br>• Line 15, Overpayment |
| FORTY-TWO | Company #11 | 2022 4th Quarter | 1/22/2023 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13g, Total deposits and refundable credits<br>• Line 15, Overpayment |

(Title 26, United States Code, Section 7206(2); Title 18, United States Code, Sections 3551 et seq.)

## COUNTS FORTY-THREE THROUGH FORTY-FIVE
(Aiding and Assisting in the Preparation of False Tax Returns)

89.    The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

27

90.    On or about the dates set forth below, within the Eastern District of New York, and elsewhere, the defendant MORAIS DICKS, willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the IRS of a Form 941, Employer's Quarterly Federal Tax Returns for each of the periods stated below, which were false and fraudulent as to one or more material matters, and which DICKS did not believe to be true and correct as to every material matter:

| Count | Entity | Tax Period | Approx. Date | False Items |
|---|---|---|---|---|
| FORTY-THREE | Company #17 | 2021 3rd Quarter | 11/10/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13g, Total deposits and refundable credits<br>• Line 15, Overpayment |
| FORTY-FOUR | Company #17 | 2021 4th Quarter | 11/10/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13g, Total deposits and refundable credits<br>• Line 15, Overpayment |
| FORTY-FIVE | Company #17 | 2022 1st Quarter | 11/10/2022 | • Line 1, number of employees<br>• Line 2, wages, tips, and other compensation<br>• Line 13g, Total deposits and refundable credits<br>• Line 15, Overpayment |

(Title 26, United States Code, Section 7206(2); Title 18, United States Code, Sections 3551 et seq.)

## COUNTS FORTY-SIX THROUGH FORTY-NINE
### (Wire Fraud)

91.    The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

28

92.    On or about the following dates, within the Eastern District of New York and elsewhere, the defendant KEITH WILLIAMS, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the SBA and one or more financial institutions administering the PPP program, and to obtain money and property from the SBA and said financial institutions by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit:

| Count | Approx. Date | Description |
| --- | --- | --- |
| FORTY-SIX | 4/15/2021 | A PPP Loan Application filed for KEITH WILLIAMS (sole proprietorship) requesting a PPP loan of approximately $20,833. |
| FORTY-SEVEN | 5/7/2021 | A PPP Loan Application filed for KEITH WILLIAMS (sole proprietorship) requesting a PPP loan of approximately $20,833. |
| FORTY-EIGHT | 4/18/2021 | A PPP Loan Application filed for Co-Conspirator #2 (sole proprietorship) requesting a PPP loan of approximately $20,833. |
| FORTY-NINE | 5/5/2021 | A PPP Loan Application filed for Co-Conspirator #2 (sole proprietorship) requesting a PPP loan of approximately $20,833. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT FIFTY
(Wire Fraud)

93.    The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

94.    On or about March 18, 2021, within the Eastern District of New York and elsewhere, defendant JAMARI LEWIS, also known as "Mr. Chaketah," together with others, did knowingly and intentionally devise a scheme and artifice to defraud the SBA and one or more

financial institutions administering the PPP program, and to obtain money and property from the SBA and said financial institutions by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: a March 18, 2021 PPP loan application filed for JAMARI LEWIS (sole proprietorship) requesting a PPP loan of approximately $20,750.

(Title 18, United States Code, Sections 1343 and 3551 et seq.)

## COUNTS FIFTY-ONE THROUGH FIFTY-TWO
### (Wire Fraud)

95.    The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

96.    On or about the following dates, within the Eastern District of New York and elsewhere, defendant EWENDRA MATHURIN, also known as, "Rayda," together with others, did knowingly and intentionally devise a scheme and artifice to defraud the SBA and one or more financial institutions administering the PPP program, and to obtain money and property from the SBA and said financial institutions by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit:

| Count | Approx. Date | Description |
|-------|--------------|-------------|
| FIFTY-ONE | 4/18/2021 | A PPP loan application filed for EWENDRA MATHURIN (sole proprietorship) requesting a PPP loan of approximately $20,833. |

| Count | Approx. Date | Description |
|---|---|---|
| FIFTY-TWO | 5/8/2021 | A PPP loan application filed for EWENDRA MATHURIN (sole proprietorship) requesting a PPP loan of approximately $20,833. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT FIFTY-THREE
(Wire Fraud)

97. The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

98. On or about April 16, 2021, within the Eastern District of New York and elsewhere, defendant JANINE DAVIS, also known as "Holiday Davis," together with others, did knowingly and intentionally devise a scheme and artifice to defraud the SBA and one or more financial institutions administering the PPP program, and to obtain money and property from the SBA and said financial institutions by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: an April 16, 2021 PPP loan application filed for JANINE DAVIS (sole proprietorship) requesting a PPP loan of approximately $20,833.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT FIFTY-FOUR
(Wire Fraud)

99. The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

31

100.    On or about June 29, 2020, within the Eastern District of New York and elsewhere, defendant TIFFANY WILLIAMS, also known as "Joy Williams," together with others, did knowingly and intentionally devise a scheme and artifice to defraud the SBA and one or more financial institutions administering the PPP program, and to obtain money and property from the SBA and said financial institutions by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit: a June 29, 2020 PPP loan application filed for Joy the Bookkeeper requesting a PPP loan of approximately $88,152.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNTS FIFTY-FIVE THROUGH FIFTY-SIX
(Wire Fraud)

101.    The allegations contained in paragraphs one through 61 are realleged and incorporated as if fully set forth in this paragraph.

102.    On or about the following dates, within the Eastern District of New York and elsewhere, the defendant MORAIS DICKS, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the SBA and one or more financial institutions administering the PPP program, and to obtain money and property from the SBA and said financial institutions by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, to wit:

32

| Count | Approx. Date | Description |
|-------|--------------|-------------|
| FIFTY-FIVE | 5/19/2020 | A PPP loan application filed for Progressive Homes requesting a PPP loan of approximately $20,832. |
| FIFTY-SIX | 6/3/2020 | A PPP loan application file for Service Advisors requesting a PPP loan of approximately $20,833. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS TWO THROUGH TWENTY-SEVEN

103.    The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts Two through Twenty-Seven, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

104.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

33

seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS FORTY-SIX THROUGH FIFTY-SIX

105.    The United States hereby gives notice to the defendants charged in Counts Forty-Six through Fifty-Six that, upon their conviction of any of such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), which requires any person convicted of such offenses to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

106.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

34

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

███████████████████████

FOREPERSON

By *David Pitluck, Asst. U.S. Attorney*
CAROLYN POKORNY
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK